UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| S&J WHOLESALE, LLC, *et al.*, | ) |
| *Plaintiffs*, | ) Case No. 1:22-cv-148 |
| v. | ) Judge Travis R. McDonough |
| | ) Magistrate Judge Susan K. Lee |
| JINDAN DIRECT, *et al.*, | ) |
| *Defendants*. | ) |

## ORDER

Before the Court are Plaintiffs' amended motion for default judgment (Doc. 79)[1] and motion for summary judgment (Doc. 80). For the following reasons, the Court will **GRANT** Plaintiffs' motion for default judgment (Doc. 79) and **DENY AS MOOT** Plaintiffs' motion for summary judgment (Doc. 80). Defendants are **ENJOINED** from manufacturing or selling any goods utilizing Plaintiffs' trade secrets and from filing Amazon complaints that contain false information about Plaintiffs. Plaintiffs are **ORDERED** to provide additional proof regarding their entitlement to monetary damages by **February 16, 2024**.

---

[1] Plaintiffs previously filed a motion for default judgment (Doc. 78) and, that same day, filed the present amended motion for default judgment. Because the Court grants the amended motion for default judgment, Plaintiffs' first motion for default judgment (Doc. 78) is **DENIED AS MOOT**. Docket Entry 82 is also presented as a motion but appears to be a proposed judgment for the Court.

## I. BACKGROUND

### A. Alleged Product Theft

On June 3, 2022, Plaintiffs filed a verified complaint against Defendants, accompanied by a request for a restraining order, temporary injunction, and permanent injunction in the Circuit Court of Hamilton County, Tennessee. (*See* Doc. 1-1, at 6–26.) Plaintiffs are limited-liability companies that create and sell various products, including dog wheelchairs, teleprompters, and smelters. (Doc. 44, at 1–2.) Defendants are various Chinese entities that sell products on Amazon. (*Id.* at 3.)

On May 3, 2023, the Court granted Plaintiffs leave to file a second amended complaint despite Defendants' argument that such amendment would be futile. (Doc. 43.) In their second amended complaint, Plaintiffs allege that Plaintiff S&J Wholesale's ("S&J") predecessor entered a business relationship on behalf all Plaintiffs with Ningbo Yinzhou RMAO Leisure Industry, Ltd. ("NYRLIL") to manufacture S&J's predecessor's products. (Doc. 44, at 6.) As part of this relationship, the predecessor and NYRLIL agreed to non-disclosure and exclusivity agreements, which stated that the predecessor would share confidential information with NYRLIL so long as it was kept secret and used only to benefit Plaintiffs. (*Id.* at 6–7.)

Plaintiffs allege that one of NYRLIL's board members, Ruan Gu Chang, suggested that the entity should breach the non-disclosure and exclusivity agreements and use the confidential information to counterfeit Plaintiffs' products. (*Id.* at 8.) When NYRLIL refused to do so, Chang and other members of NYRLIL founded a new company to execute this plan, Ningbo Yonk Machinery Co., Ltd. ("Ningbo"). (*Id.* at 9.) The information allegedly misappropriated was comprised of "manufacturing methods, bills of materials, cost information, specifications, CAD, manufacturing volume and velocity, and sources of supply" as well as:

(a) Sales volume information . . . of Plaintiffs' Products, allowing Defendants to choose which ones to profitably copy;

(b) Manufacturing cost information relating to Plaintiffs' costs and expenses in manufacturing the Products at issue;

(c) Financial information relating to profit margins for Plaintiffs' Products, again allowing Defendants to choose which profitable Products to copy; and

(d) Drawings, specifications, sources of supply, and bills of materials relating to Plaintiffs' Products including, for example, an identification of the components or subassemblies of Plaintiffs' products and the third party supplier . . . .

(*Id.* at 6–7.) Plaintiffs also alleged this confidential information included "product production drawings showing dimensions, composition, design, and assembly of Products, bills of materials showing the parts of the Products and the sources thereof; and financial information relating to the Products and their manufacturing costs, shipping costs, units sold, and order velocity." (*Id.* at 7.) According to Plaintiffs, this confidential information, combined with public information, such as pricing, allowed Defendants to identify Plaintiffs' most profitable products and to counterfeit these products. (*Id.*)

Ningbo is not a defendant in this case. Instead, Defendants are entities that, according to Plaintiffs, bought counterfeit products from Ningbo and sold the products on Amazon at prices substantially lower than Plaintiffs. (*Id.*)

**B. Alleged False Amazon Complaints**

On December 30, 2021, Plaintiffs filed a complaint containing similar allegations against a different group of defendants in state court. (*Id.* at 10.) Following this, on January 21, 2022, Plaintiffs allege they received an email stating "[y]ou also know what we can do. If you do not withdraw this court complaint. We will fight back at home!!! This is our final warning." (*Id.*) On January 25, 2022, Plaintiffs received another email with the subject line "Reciprocal

3

Case 1:22-cv-00148-TRM-SKL   Document 85   Filed 02/01/24   Page 3 of 11   PageID #: 1295

Retalition [sic]" that stated, "our technical staffs will also deal with your three [Amazon Standard Identification Numbers] accordingly, making it impossible to sell." (*Id.* at 10–11.) These emails continued into February 2022, threatening attacks on Plaintiffs' Amazon seller accounts if the lawsuit proceeded. (*Id.*)

On February 15, 2022, Plaintiffs allege that Defendants began filing false complaints with Amazon. (*Id.* at 12.) These complaints stated that Plaintiffs' Amazon seller pages contained copyrighted text used without authorization. (*Id.*) Defendants filed further complaints making the same allegations on March 22 and March 23, 2022, that contained links to an allegedly fake website, where Defendants placed Plaintiffs' content. (*Id.*) As a result, Amazon disabled Plaintiffs' ability to sell their products on the website. (*Id.*) Plaintiffs responded to the complaints, prompting Amazon to reactivate their accounts, but then Defendants resubmitted nearly identical complaints, and Amazon again disabled Plaintiffs' accounts. (*Id.* at 12–13.) On April 28, 2022, Defendants filed a new format of false complaints—now alleging that Plaintiffs were infringing on a trademark, rather than copyrighted text, but the allegedly infringed trademark is federally registered to the Plaintiffs. (*Id.* at 13.) Defendants continued making false complaints, including allegations that Plaintiffs' products contained illegal drugs. (*Id.* at 13–14.)

In the second amended complaint, Plaintiffs assert claims for: (1) intentional interference with existing and prospective business relationships; (2) injunctive relief; (3) fraud; (4) unjust enrichment; (5) violation of the Tennessee Consumer Protection Act ("TCPA"); (6) unfair competition; (7) misappropriation of trade secrets under the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701, *et seq*; and (8) misrepresentation under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq*. (Doc. 44, at 15–25.)

## C. Procedural History

On November 13, 2023, Magistrate Judge Susan K. Lee granted attorney William C. Killian and Kevin Christopher's motion to withdraw as Defendants' counsel. (Doc. 72.) In doing so, the Court ordered that "on or before December 4, 2023, each Defendant shall file a notice with the Court indicating whether he, she, or it is an individual or a corporate entity organized under United States or Chinese law." (*Id.* at 2.) The Court further ordered that, if any Defendant is an individual, he shall have substitute counsel appear on his behalf or notify the Court that he is proceeding without an attorney, and, if any Defendant was a corporation, it shall have substitute counsel appear on its behalf. (*Id.*) The Court warned that "any failure to fully and timely comply with this order may result in sanction up to and including entry of default judgment against them." (*Id.* at 3.)

Defendants failed to comply, and Plaintiffs moved for default judgment (Doc. 73). The Court then issued a show-cause order requiring Defendants to show cause as to why default judgment should not be entered against them. (Doc. 75.) The Court warned that "[f]ail[ure] to do so will result in the Court entering default judgment against Defendants." (*Id.*) Defendants did not timely respond to this order. Therefore, on January 3, 2024, the Court directed the Clerk to enter default against Defendants. (Doc. 76.) The Clerk entered default the next day. (Doc. 77.)

Plaintiffs then moved for default judgment on January 5, 2024. (Doc. 79.) Defendants still have not complied with Judge Lee's order, and Plaintiffs' motion is ripe for the Court's review.

## II. STANDARD OF LAW

Applications for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. Following the Clerk's entry of default pursuant to Rule 55(a) and the plaintiff's application for default judgment under Rule 55(b), the complaint's factual allegations regarding liability are taken as true, while allegations regarding damages must be proven. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). To determine damages, "[t]he district court must instead conduct an inquiry in order to ascertain the amount . . . with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The party seeking default judgment bears the burden of establishing compensatory damages to a reasonable degree of certainty by a preponderance of the evidence. *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011); *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 563 (6th Cir. 2011) (citations omitted). "[C]ourts have considerable latitude in determining the appropriate award through an independent evaluation of the plaintiff's alleged damages." *RQSI Glob. Asset Allocation Master Fund, Ltd. v. APERCU Int'l PR LLC*, No. 3:15-cv-00778, 2019 WL 1922052, at *5 (W.D. Ky. Feb. 22, 2019), *report and recommendation adopted*, No. 3:15-cv-778, 2019 WL 1922045 (W.D. Ky. Mar. 29, 2019).

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may, but is not required to, hold a hearing to determine damages that are not for a sum certain; in lieu of a hearing, a court may review sworn affidavits sufficient to establish the amount of damages. *See I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020) ("In order to determine damages, the court can, but is not required

to, hold an evidentiary hearing. '[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages.'") (alteration in original) (quoting *Broad. Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009)); Fed. R. Civ. P. 55(b)(2) (A district court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj*, 331 F. App'x at 354 ("[Rule 55(b)(2)], by its terms, allows but does not require the district court to conduct an evidentiary hearing.") (citation omitted).

### III. ANALYSIS

The Court has previously found that the factual allegations contained in Plaintiffs' second amended complaint, if true, would entitle them to relief on their claims for: (1) intentional interference with existing and prospective business relationships; (2) injunctive relief; (3) fraud; (4) unjust enrichment; (5) violation of the TCPA; (6) unfair competition; (7) misappropriation of trade secrets under TUTSA; and (8) misrepresentation under the DMCA. (*See* Doc. 43 (rejecting Defendants' argument that a second amended complaint would be futile); Doc. 53 (denying Defendants' motion to dismiss these claims).) Therefore, the Court finds that, taking the factual allegations in Plaintiffs' second amended complaint as true, Plaintiffs are entitled to default judgment on their claims. The Court **ADJUDGES** that Defendants are liable for the alleged violations. The only remaining issue is relief. Plaintiffs seek monetary damages, a permanent

injunction restraining Defendants from the wrongful conduct in the second amended complaint, and the Court to order "the release to Plaintiffs of all funds held by Amazon." (Doc. 79, at 4.)

### A. Monetary Damages

Plaintiffs seek $3,000,000 in monetary damages. (Doc. 79, at 4.) The Court does not take Plaintiffs' allegations regarding damages as true, and Plaintiffs must instead prove any damages to a "reasonable certainly." *Vesligaj*, 331 F. App'x at 355. The only evidence Plaintiffs provide in support of their requested damages are a request for admission, to which Defendants did not respond, that states "Plaintiffs have suffered damages of at least $3,000,000." (Doc. 79-1, at 3.) The Court is not convinced to a reasonable degree of certainty from this one sentence that Plaintiffs incurred damages of $3,000,000. Therefore, the Court will allow Plaintiffs to file additional evidence, including affidavits, supporting their claimed damages. Any additional evidence shall be submitted by **February 16, 2024**.

### B. Injunctive Relief

Plaintiffs also seek a permanent injunction restraining Defendants from the conduct alleged in the complaint and the Court to order "the release to Plaintiffs of all funds held by Amazon." (Doc. 79, at 4.)

#### i. *Permanent Injunction Against Defendants*

A court may enter an injunction under the TCPA, TUTSA, and the DMCA when a defendant has violated the act. *See* Tenn. Code Ann. § 47-18-109(b); Tenn. Code Ann. § 47-25-1703(a); 17 U.S.C. § 1203(b)(1). Preliminarily, the Court has found that Defendants violated each act. Therefore, to obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

> remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The Court first considers whether Plaintiffs' injuries are irreparable and whether monetary damages can adequately compensate those injuries. "Remedies at law are not sufficient to compensate for disclosure, because no amount of money damages will guarantee that [a defendant] does not further share [a plaintiff's] trade secret with others." *ECIMOS, LLC v. Carrier Corp.*, No. 2:15-cv-2726, 2018 WL 7272058, at *7 (W.D. Tenn. Oct. 9, 2018). Taking Plaintiffs' allegations as true, their trade secrets were disclosed to Defendants. Additionally, the threat of future copyright violations is an irreparable injury that cannot be adequately compensated by monetary damages. *See Shell v. Lautenschlager*, No. 1:15-cv-1757, 2018 WL 4636457, at *8 (N.D. Ohio Sep. 27, 2018). Therefore, the Court finds that Plaintiffs' injuries are irreparable and that monetary damages do not adequately compensate for these injuries.

As to the third element, the balance of hardships also favors injunctive relief. Defendants have no right to engage in unlawful trade practices and, therefore, are not harmed by the Court enjoining their use. The unlawful trade practices have a negative effect on Plaintiffs. Therefore, the balance of hardships favors injunctive relief. Lastly, on the fourth and final factor, "the public has an interest in discouraging unfair trade practices." *Hoover Transp. Servs., Inc. v.*

*Frye*, 77 F. App'x 776, 785 (6th Cir. 2003) (per curiam). Accordingly, Plaintiffs have satisfied all four factors necessary for an injunction against Defendants.

Therefore, Defendants are hereby **ENJOINED** from manufacturing or selling any goods utilizing Plaintiffs' trade secrets and from filing Amazon complaints that contain false information about Plaintiffs.

### ii. Order Requiring Amazon to Release Funds

Plaintiffs also ask the Court to order "the release to Plaintiffs of all funds held by Amazon." (Doc. 79, at 4.) But Amazon is not a party in this case. "[A] federal court is powerless to proceed to an adjudication" if it lacks personal jurisdiction. *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). This includes its ability to issue an injunction. *See Brooks v. Westbrooks*, 3:16-cv-3010, 2018 WL 272682, at *4 (M.D. Tenn. Jan. 3, 2018) (citing Charles A. Wright *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.) ("The first prerequisite to obtaining a binding injunction is that the court must have valid *in personam* jurisdiction over the defendant.")).

Here, the Court does not have personal jurisdiction over Amazon. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King*, 694 F.3d at 650. Amazon has not been served with a copy of the second amended complaint or a summons. Therefore, the Court lacks personal jurisdiction over Amazon and cannot enjoin it.

### IV. CONCLUSION

For the above-stated reasons, Plaintiffs' amended motion for default judgment (Doc. 79) is **GRANTED**. Because the Court grants this motion, Plaintiffs' motion for summary judgment (Doc. 80) is **DENIED AS MOOT**. Defendants are **ENJOINED** from manufacturing or selling

any goods utilizing Plaintiffs' trade secrets and from filing Amazon complaints that contain false information about Plaintiffs. Plaintiffs shall file any supplemental evidence demonstrating that they are entitled to the requested damages by **February 16, 2024**.

    **SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**